1  DEBRA W. YANG
   United States Attorney
2  STEVEN D. CLYMER
   Special Assistant United States Attorney
3  Chief, Criminal Division
   STEVEN R. WELK
4  Assistant United States Attorney
   Chief, Asset Forfeiture Section
5  VICTOR A. RODGERS
   California Bar No. 101281
6  Assistant United States Attorney
   Asset Forfeiture Section
7       Federal Courthouse, 14th Floor
        312 North Spring Street
8       Los Angeles, California 90012
        Telephone:  (213) 894-2569
9       Facsimile:  (213) 894-7177

10 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

11

12              UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                  _____ DIVISION

15 UNITED STATES OF AMERICA,     )  No. LACV03-6809 NM (RNBx)
                                 )
16          Plaintiff,           )  COMPLAINT FOR FORFEITURE
                                 )
17                               )  18 U.S.C. §§ 981(a)(1)(A) & (C)
               v.                )  31 U.S.C. § 5317(c)(2)
18                               )
                                 )  [DEA]
19 $118,312.46 IN BANK FUNDS     )
   SEIZED FROM HEMLOCK FEDERAL   )
20 BANK ACCOUNT NUMBERS          )
   20-00-069061, 20-50-22445     )
21 AND 20-00-069200; ONE 2003    )
   HONDA ACCORD EX; ONE 1999     )
22 MERCEDES-BENZ S500;           )
   $11,500.00 IN U.S. CURRENCY   )
23 SITUATED IN SAFETY DEPOSIT    )
   BOX 1815 AND $3,994.00 IN     )
24 U.S. CURRENCY,                )
                                 )
25          Defendants.          )
                                 )
26 _____)

27

28



FILED

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
LOS ANGELES

2003 SEP 22   PM 3: 37

ENTER ON ICMS

SEP 25 2003

Plaintiff United States of America brings this claim against $118,312.46 in bank funds seized from Hemlock Federal Bank account numbers 20-00-069200, 20-00-069061 and 20-50-22445 (the "defendant bank funds"), One 2003 Honda Accord EX, One 1999 Mercedes-Benz S500, $11,500.00 in U.S. Currency situated in Safe Deposit Box Number 1815 and $3,994.00 in U.S. Currency (collectively, the "defendants" or the "defendant assets") as follows:

<u>JURISDICTION AND VENUE</u>

1.   The government brings this <u>in rem</u> forfeiture action pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 31 U.S.C. § 5317(c)(2).

2.   This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.   Venue lies in this district pursuant to 28 U.S.C. § 1395.

<u>PERSONS AND ENTITIES</u>

4.   The plaintiff in this action is the United States of America.

5.   The defendants are:

    a.   $118,312.46 in bank funds at Hemlock Federal Bank, 8855 South Ridgeland Avenue, Oak Lawn, Illinois 60453, consisting of $90,217.46 in funds in account number 20-00-069061, $18,019.62 in funds in account number 20-50-22445 and $10,075.38 in funds in account number 20-00-069200 seized on or about April 15, 2003 pursuant to federal seizure warrants;

    b.   One 2003 Honda Accord EX VIN number JHMCM56603C018686, registered to Saleh Mizyed at 6440 West 89th Place, Oak Lawn, Illinois and seized

2

1                on or about April 15, 2003 from 6440 West 89th Place,

2                Oak Lawn, Illinois;

3       c.    One 1999 Mercedes-Benz S500 VIN number

4                WDBGA51G4XA418780, registered to Saleh Mizyed at

5                6440 West 89th Place, Oak Lawn, Illinois and seized

6                on or about April 15, 2003 from 6440 West 89th Place,

7                Oak Lawn, Illinois;

8       d.    $11,500.00 in U.S. Currency situated in Safe Deposit

9                Box Number 1815 at Hemlock Federal Bank and seized

10               on or about April 15, 2003; and

11       e.    $3,994.00 in U.S. Currency seized on or about April

12               15, 2003 from the person of Saleh Mizyed.

13     6.   The defendants were seized by the Drug Enforcement

14 Administration ("DEA") and are in the custody of the United States

15 Marshals Service where they will remain subject to this Court's

16 jurisdiction during the pendency of this action.

17     7.   The interests of Galeb Mizyed, Saleh Mizyed, Badeeh

18 Mizyed and Harlem Motor Cars, Inc. may be adversely affected by

19 these proceedings.

20                      BASIS FOR FORFEITURE

21 Background And Summary Of The Investigation

22     8.   DEA commenced an investigation into the drug trafficking

23 activities of the Mizyed family, including Galeb Mizyed, his

24 brother Abdul Mizyed and their father, Saleh Mizyed, after learning

25 that Galeb Mizyed was responsible for coordinating and distributing

26 large amounts of pseudoephedrine into the southern California area

27 which Galeb Mizyed and his co-conspirators thereafter redistributed

28 to other pseudoephedrine brokers or directly to persons who used

1 the pseudoephedrine to create methamphetamine.  As a result of the

2 investigation, law enforcement officers have learned that the

3 Mizyeds have been trafficking in pseudoephedrine since at least the

4 middle of 2001.

5     9.   During the investigation and prior to the seizure of the

6 defendant assets, law enforcement officers seized from Galeb Mizyed

7 and persons or places under his control (1) over 600 pounds of

8 pseudoephedrine in Rancho Cucamonga, California on November 30,

9 2002; (2) over 3 tons of pseudoephedrine in Las Vegas, Nevada on

10 February 7, 2003; and (3) over $250,000.00 in drug proceeds.  In

11 furtherance of their illegal pseudoephedrine drug trafficking

12 scheme, the Mizyeds, who maintained their permanent residency in

13 Illinois but shuttled back and forth between California and

14 Illinois in connection with their drug trafficking business, and

15 their co-conspirators engaged in the following actions, among

16 others:

17         a.   The Mizyeds purchased pseudoephedrine from persons

18             in Canada, including Ibraham Balsheh, a Canadian

19             citizen and resident of Ottawa, Canada, and imported

20             those drugs into the United States.

21         b.   Galeb Mizyed distributed the pseudoephedrine in

22             California, either selling it directly to

23             methamphetamine manufacturers, or to pseudoephedrine

24             brokers who resold the product to methamphetamine

25             manufacturers.

26         c.   Galeb Mizyed's female acquaintances, including

27             Kimberly Easterling, Mirlo Paez-Calderon and Meiko

28             Choniece Jackson converted the cash received from

pseudoephedrine sales into money orders payable to Galeb or Saleh Mizyed.

d.   Rather than purchase money orders totaling $10,000.00 or more from a single vendor at the same time, thereby triggering the federal currency reporting requirement obligating money order issuers to report the currency transaction under federal currency reporting requirements, Easterling, Paez-Calderon and Jackson would instead purchase money orders totaling over $10,000.00 from more than one money order issuer in a single day, in an attempt to prevent any tracing of the funds to an illegal drug trafficking source.

e.   In addition, because restrictions exist relative to a money order vendor selling money orders in excess of $3,000.00 to a single purchaser at the same time, Galeb Mizyed's co-conspirators attempted to avoid those restrictions by purchasing individual money orders for amounts significantly below the $3,000.00 limit on a given day, when the total of the smaller money orders reached sums far above the $3,000.00 limit.

f.   Easterling, Paez-Calderon and Jackson then sent the money orders, frequently via federal express, to the Mizyeds in Illinois.

g.   Upon receiving the money orders, Galeb and Saleh Mizyed deposited the money orders, which represented the proceeds of drug trafficking and moneys used in

transactions designed to avoid currency reporting and other requirements, into the Mizyeds' bank accounts at Hemlock Federal Bank in Illinois.

Law Enforcement Surveillance Of The Mizyed Drug Trafficking Organization Results In Substantial Seizures Of Pseudoephedrine, Cash And Money Orders.

10.    Pursuant to lawful Court Orders, a number of conversations between Mizyed and other members of his drug trafficking conspiracy were intercepted by law enforcement officers.   The substance of those conversations, as interpreted by law enforcement officers, are set forth below.

        A.    Galeb Mizyed Negotiates Pseudoephedrine Sale Which Results In Seizure of 600 Pounds of Pseudoephedrine from Rancho Cucamonga on November 30, 2002.

11.    On October 25, 2002, Galeb Mizyed spoke with Mieko Choniece Jackson, a female born on or about October 24, 1977. During the conversations, Galeb Mizyed told Jackson that he wanted to stop by the storage location in Ontario, California to view the contents of the storage locker situated there.   He also reminded Jackson that he gave her cash which he wanted Jackson to "exchange" for him (meaning Galeb Mizyed wanted Jackson to purchase money orders with the cash, and send them to Galeb Mizyed).

12.    On November 27 and 29, 2002, Galeb Mizyed spoke with Max Stevenson, and made preparations for the sale of pseudoephedrine which ultimately took place on November 30, 2002.   On November 30, 2002, Galeb Mizyed had numerous conversations concerning this drug transaction.   At about 12:02 p.m and 12:10 p.m, Galeb Mizyed spoke with an unidentified male and discussed prices and quantities of

6

1   pseudoephedrine Galeb Mizyed was prepared to sell.  At about 12:18

2   p.m., Galeb Mizyed spoke with David Gregory Wallace, and told him

3   that the pseudoephedrine buyers were on their way over to pick up

4   the pseudoephedrine from Galeb Mizyed and Stevenson.  Approximately

5   one hour later, at about 1:30 p.m., Stevenson departed from 13455

6   Sumter Street in Fontana, California, a residence used by Galeb

7   Mizyed, in a new white Navigator with paper plates.  At

8   approximately 1:38 p.m., Galeb Mizyed told a third person where

9   that individual could pick up the pseudoephedrine.  Stevenson

10  traveled to a storage location in Rancho Cucamonga, and loaded

11  pseudoephedrine from the storage location into a white mini-van

12  provided by two other individuals.  Stevenson then left the storage

13  facility in the mini-van and was stopped by law enforcement

14  officers.  After Stevenson consented to a search of the vehicle,

15  officers found 15 boxes labeled "Made in Canada."  Inside the boxes

16  were large plastic bags containing pseudoephedrine in pill-form,

17  later found to weigh about 616 pounds.

18       B.   <u>Saleh and Galeb Mizyed Negotiate Pseudoephedrine Sale</u>
             <u>Which Results In Seizure on February 7, 2003 Of 3 Tons Of</u>
19           <u>Pseudoephedrine Imported From Canada</u>.

20       13.  On January 2, 2003, Saleh Mizyed crossed into the United

21  States from Windsor, Ontario, Canada after meeting with Ibraham

22  Balsheh, a Canadian resident and pseudoephedrine supplier.  On

23  January 3 and 4, 2003, co-conspirator Jean-Robert Gaston and

24  another individual unloaded approximately 85 and 81 boxes of

25  pseudoephedrine, respectively, into storage units at 1525

26  Sieveright Road, unit #14 and 3105 Hawthorne Building F, unit # 7.

27  On January 24, 2003, at about 3:26 p.m., Saleh Mizyed spoke with

28  / / /

7

1  Balsheh who told Saleh Mizyed that he was still waiting to complete

2  the pseudoephedrine transaction.

3       14.  On January 31, 2003, at about 11:30 p.m., Galeb Mizyed

4  ordered 150 boxes of pseudoephedrine from Balsheh for delivery in

5  Canada.  On February 2, 2003, Balsheh told Brian Carpenter, a

6  Canadian citizen, that Carpenter could pick up the pseudoephedrine

7  on February 4, 2003.  On February 3, 2003, Gaston and another

8  individual loaded approximately 150 boxes of pseudoephedrine from

9  the Sieveright and Hawthorne storage locations.  Thereafter,

10 Carpernter received the boxes of pseudoephedrine from Gaston, which

11 were off-loaded into a tractor trailer which Carpenter used to

12 transport the drugs into the United States.  Carpenter traveled to

13 Gary, Indiana, where he met with Jaimie Farah at a truck stop and

14 transferred the pseudoephedrine into a tractor trailer used by

15 Farah, on February 5, 2003.  Farah then traveled to Las Vegas,

16 Nevada, where he met with Easterling on February 6, 2003.  The 150

17 boxes containing approximately 6,900 pounds (three tons) of

18 pseudoephedrine were seized on February 7, 2003.

19      C.   January and February 2003 Seizures of Money Orders
              Purchased In California And Sent By Federal Express To
20            Galeb Mizyed in Illinois

21      15.  On or about January 6, 2003, a federal search warrant was

22 executed on a federal express package sent from Mirlo Paez-

23 Calderon.  Law enforcement officers seized $6,000.00 in money

24 orders found in the package.

25      16.  On or about February 21, 2003, a federal search warrant

26 was executed, which resulted in the seizure of money orders

27 totaling $26,000.00 in Illinois.  In telephone conversations after

28 the seizure, Galeb Mizyed told Paez-Calderon that law enforcement

officers had taken all the money orders that an unidentified third party had given him to purchase pseudoephedrine.

     D.   <u>Seizures of Cash Exceeding $200,000.00 From Galeb Mizyed and his Co-conspirators Between December 4, 2002 and January 9, 2003, Including Cash Seizure When Galeb Mizyed Attempted to Enter Canada</u>.

17.  On December 4, 2002, after Jackson made arrangements to purchase a one-way ticket for Galeb Mizyed to travel to Illinois from Los Angeles, members of the Los Angeles International Airport ("LAX") DEA Task Force made contact with Galeb Mizyed and his two associates at LAX, and seized $112,920.00 in currency carried by those individuals.

18.  In addition, law enforcement officers seized $101,160.00 in U.S. currency on December 28, 2002, which was hidden in both rear wheel wells of the Hummer H2 in which Galeb and Abdul Mizyed were traveling while en route from California to Illinois.

19.  On January 9, 2003, Galeb Mizyed spoke with Stevenson concerning the seizure of approximately $12,000.00 by the Bureau of Immigration and Customs Enforcement (formerly U.S. Customs) from Galeb Mizyed and his associates at the United States/Canada border. During the conversation, Galeb Mizyed told Stevenson that he had been denied entry into Canada.

<u>Money Orders Purchased In California In Violation Of Law Are Deposited, Along With Structured Deposits Of Cash, Into The Mizyed Illinois Bank Accounts Which Contain The Defendant Bank Funds</u>.

20.  It is common for drug traffickers to structure deposits into their bank accounts to evade the currency reporting requirement which obligates banks to report currency deposits which

1  exceed $10,000.00.  In order to circumvent this requirement, drug

2  traffickers deposit currency in a bank account up to $10,000.00,

3  and shortly thereafter make additional deposits (for $10,000.00 or

4  less) because they believe the bank will not report the

5  transactions.  In addition, drug traffickers often attempt to

6  disguise the cash proceeds from their drug transactions by

7  converting those proceeds into money orders.  The money orders are

8  usually purchased in amounts less than $3,000.00, so that the money

9  order vendor can sell the money orders to the drug trafficker

10  without complying with the requirements of 31 U.S.C. § 5325.

11      A.   Hemlock Federal Bank Account Number 20-00-69061 ("Target
           Account # 1").

12

13      21.   Pursuant to a transfer on January 22, 2002 of the

14  remaining funds in Hemlock Federal Bank Account Number 20-00-66827,

15  which was in the name of Galeb, Saleh and Badeeh Mizyed, to Target

16  Account # 1, $51,058.18 was transferred into Target Account # 1.

17  Before the January 22, 2002 transfer, the following deposits were

18  made into Account Number 20-00-66827:

| Date of Deposit | Amount of Deposit | Form of Deposit |
| --- | --- | --- |
| 01/19/2001 | $10,000.00 | Money Orders (all for $500.00 and purchased in Southern California during January 2001) |
| 01/26/2001 | $ 5,000.00 | Money Orders (all for $500.00 and purchased in Southern California during January 2001) |
| 06/04/2001 | $10,000.00 | Cash |
| 06/05/2001 | $10,000.00 | Cash of $2,876.00 and check for $7,174.00 |
| 06/08/2001 | $10,000.00 | Cash of $9,000.00 and remainder in checks |

10

| | | |
|---|---|---|
| 06/12/2001 | $  9,909.00 | Cash |
| Total | $54,909.00 | |

22.   After the January 22, 2002 transfer, the following deposits were made into Target Account # 1:

| Date of Deposit | Amount of Deposit | Form of Deposit |
|---|---|---|
| 07/29/2002 | $10,000.00 | $ 9,750.00 in Money Orders (all purchased in California) and $250.00 in cash |
| 07/30/2002 | $10,000.00 | $ 8,500.00 in Money Orders (all purchased in California) and $1,500 from an unknown source |
| 08/20/2002 | $ 9,000.00 | Cash |
| 08/23/2002 | $ 9,000.00 | Cash |
| Total | $38,000.00 | |

23.   The total of the above-referenced deposits is $92,909.00 ($54,909.00 + $38,000.00).  On October 11, 2002, $20,000.00 was withdrawn from Target Account # 1, leaving a balance in that account of $89,727.68.  Since October 2002, the account has had virtually no activity, other than the crediting of interest. Pursuant to a federal seizure warrant, $90,217.46 in funds were seized from Target Account # 1 on or about April 15, 2003.

  B.   Hemlock Federal Bank Account Number 20-00-69200 ("Target Account # 2").

24.   Target Account # 2 was opened with one deposit on or about July 30, 2002.  On that date, money orders totaling $10,000.00 (12 money orders in the sum of $750.00 each and 1 money order for $1,000.00) were deposited into Target Account # 2. Pursuant to a federal seizure warrant, $10,075.38 in funds were seized from Target Account # 2 on or about April 15, 2003.

/ / /

11

C.   Hemlock Federal Bank Account Number 20-50-22445 ("Target Account # 3").

25.   The following deposits were made into Target Account # 3:

| Date of Deposit | Amount of Deposit | Form of Deposit |
| --- | --- | --- |
| 07/29/2002 | $10,000.00 | Money Orders (all purchased in Southern California on July 26, 2002 and consisting of 20 money orders for $500 each bought at three different locations) |
| 07/30/2002 | $10,000.00 | Money Orders (all purchased in Southern California) |
| 08/01/2002 | $ 8,000.00 | Money Orders (all purchased in Southern California for $500 each, including 9 money orders purchased on July 24 from two South Gate, California locations, 6 money orders purchased on July 25 from two locations and 1 purchased on July 26 from a South Gate location) |
| 08/02/2002 | $ 7,000.00 | Money Orders (all purchased in Southern California on July 26, 2002 and consisting of 14 money orders for $500 each bought at three different locations) |
| 08/05/2002 | $ 9,000.00 | Money Orders (all purchased in Southern California, including 14 money orders purchased on July 29, 2002 for $500 each from five different locations and 4 money orders for $500 each) |
| Total | $44,000.00 | |

26.   Pursuant to a federal seizure warrant, $18,019.62 in funds were seized from Target Account # 3 on or about April 15, 2003.

/ / /

/ / /

12

D.    Money Orders Purchased In California From July 24, 2002 to July 30, 2002.

27.    A significant number of money orders purchased in California between July 24 and 30, 2002 and linked to the Mizyed co-conspirators were thereafter deposited into the Target Accounts. The money orders were deposited into Target Account # 1 on July 29 and 30; Target Account # 2 on July 30 and Target Account # 3 on July 29, 30, August 1, 2 and 5.    The total money orders, segregated by date of purchase and money order issuer, are as follows:

| Date | MoneyGram | Western Union | Continental | Others | Total Amount |
|------|-----------|---------------|-------------|--------|--------------|
| 7/24/2002 (Wednesday) | $23,500 | 0 | 0 | 0 | $23,500.00 |
| 7/25/2002 (Thursday) | $19,000 | $ 7,000 | 0 | 0 | $26,000.00 |
| 7/26/2002 (Friday) | $75,800 | $16,000 | $ 5,000 | $ 1,400 | $98,200.00 |
| 7/29/2002 (Monday) | $16,500 | $ 26,500 | $ 5,000 | 0 | $48,000.00 |
| 7/30/2002 (Tuesday) | 0 | $ 8,500 | 0 | 0 | $ 8,500.00 |
| Total | $134,800 | $ 58,000 | $ 10,000 | $ 1,400 | $204,200.00 |

28.    Each of the money order issuers (MoneyGram, Western Union and Continental), would be required to report money order purchases exceeding $10,000.00 on one day.    However, drug traffickers typically circumvent this requirement by purchasing the money orders from multiple locations, and then depositing the money orders in different bank accounts in attempting to conceal the source of the drug proceeds.

29.    The money orders deposited into the Target Accounts from July 29 to August 6, 2002 constitute a portion of the above-referenced money orders purchased in California from July 24 to July 29, 2002.    The money orders themselves also show that they are part of the narcotic trafficking/structuring scheme because, among

13

other things, a substantial number of them were purchased in South Gate, California, where Paez-Calderon, the person who sent over $30,000.00 in money orders to Mizyed in Illinois in January and February 2003, resides.  Money orders deposited into Target Account ## 1 and 3 between July 29 and August 5, 2003 include $9,250.00 in money orders (in denominations of $500, $750 and $1,000) purchased on July 24 from four different South Gate locations; and $27,300 in money orders purchased on July 26, consisting of $16,500 in money orders (for $750.00 each) at one South Gate location, $1,500 in money orders (for $500 each) purchased at another South Gate location, $1,500 in money orders (for $500 each) purchased at yet another South Gate location, and $7,800 in money orders (7 for $1,000 and 1 for 800) purchased at still another South Gate location.  In addition, the money orders deposited into Target Account # 2 on July 30 2002, consist of twelve money orders in the sum of $750.00 purchased from one South Gate location, and one money order for $1,000.00 purchased from another South Gate location.

  E. <u>July 29 and 30 Money Order Deposits Into Target # 1</u>.

  30.  As set forth above, money orders of $9,750.00 and $8,500.00 were deposited into Target # 1 on July 29 and 30, 2002, respectively.  The $9,750.00 in July 29-deposited money orders consist of the following:

    a. 14 money orders plus 1 erroneously credited money order for $500 each (total $7,500.00), purchased in Los Angeles on July 26, 2002; and

    b. 3 money orders for $750.00 each (total $2,250.00 and purchased at one store in South Gate, California on July 24, 2002.

/ / /

14

31.   On July 30, 2002, money order deposits into Target # 1 were $8,500.00 and into Target # 3 were $10,000.00, bringing the total July 30, 2002 money order deposits to $18,500.00.  The $18,500.00 in July 30, 2002 money order deposits to Target Accounts ## 1 and 3 consist of:

    a.   money orders totaling $1,750.00 (one for $750.00 and the other for $1,000.00) purchased on July 24, 2002 at two locations in South Gate, California;

    b.   money orders totaling $15,950.00 purchased on July 26, 2002 from:

        1.   two locations in South Gate (11 money orders for $750.00 from one location in South Gate; and 6 money orders for $1,000.00 and 1 money order for $800.00 from another location in South Gate); and

        2.   two post office facilities in California (3 money orders for $300.00 each); and

    c.   one money order for $800.00 purchased from Nix Check Cashing in California.

Execution of Federal Search Warrants On April 15, 2003

32.   On April 15, 2003, law enforcement officers executed federal search warrants on a number of locations linked to the Mizyed family in Illinois and elsewhere.  In this regard, law enforcement officers executed a search warrant at 6440 West 89th Place, in Oak Lawn, Illinois, the residence of Saleh Mizyed. Found and seized at the residence were the defendants One 2003 Honda Accord EX and One 1999 Mercedes-Benz S500.  In addition, law enforcement officers arrested Saleh Mizyed and seized the defendant $3,994.00 in currency he was carrying.

33.   During the execution of the search warrants, law enforcement officers discovered that the Mizyeds maintained safety deposit boxes at Hemlock Federal Bank.  Thereafter, law enforcement

officers seized the defendant $11,500.00 in U.S. currency from Safety deposit box 1815 at Hemlock Federal Bank.

The Criminal Indictment Of The Mizyeds

34.  A total of eighteen individuals, including Galeb, Abdul, Saleh and Ghalia Mizyed were indicted in late April of this year. United States v. Galeb Mizyed, et al., Case No. CR 03-398, Central District of California.  The Indictment charges the criminal defendants with distributing pseudoephedrine between March 1999 and April 2003.  In addition, Saleh and Galeb Mizyed and several other individuals were also indicted in the Northern District of Illinois on pseudoephedrine trafficking and other charges.

The Mizyeds Lack Of Legitimate Sources Of Income To Support Their Possession Of The Defendant Assets.

35.  The Mizyeds lack sufficient legitimate income to support their possession of the defendant assets.  As reflected above, from January 19, 2001 until August 23, 2002, $92,909.00 in funds were deposited into Target Account # 1, and from July 30 to August 5, 2002, $54,000.00 was deposited into Target Account # 2 ($10,000.00 on July 30) and # 3 ($44,000.00 from July 29, 2002 to August 5, 2002).  Accordingly, a total of $146,909.00 was deposited into the Target Accounts from January 2001 to August 2002.  In addition, Galeb Mizyed has indicated that he paid approximately $30,000.00 in cash for a Rolex watch during 2001.  Further, an additional $225,000.00 was seized from Galeb Mizyed and his associates as set forth in paragraphs 17 to 19 above, $232,316.00 was seized when Abdul Mizyed was at LAX with a female companion attempting to

16

purchase a ticket to Illinois.  In addition, Galeb Mizyed's 2001

tax return reflects taxable income of $17,338.00 for calendar year

2001.

FIRST CLAIM FOR RELIEF

36.  Plaintiff incorporates the allegations of paragraphs 1-35

above as though fully set forth herein.

37.  Based on the above, plaintiff alleges that the defendants

represent or are traceable to proceeds of illegal narcotics

trafficking, were intended to be used in one or more exchanges for

a controlled substance or listed chemical, or were used to

facilitate one or more exchanges for a controlled substance or

listed chemical, in violation of 21 U.S.C. § 841 et seq.  The

defendants are therefore subject to forfeiture pursuant to 21

U.S.C. § 881(a)(6).  In addition, with respect to the defendant

bank funds, to the extent that the monies seized from the bank

accounts are not the actual monies directly traceable to the

illegal activity identified herein, plaintiff alleges that the

defendant bank funds are identical property found in the same

account as the property involved in the specified offense,

rendering them subject to forfeiture pursuant to 18 U.S.C. §

984(a).

SECOND CLAIM FOR RELIEF

38.  Plaintiff incorporates the allegations of paragraphs 1-35

above as though fully set forth herein.

39.  Based on the above, plaintiff alleges that the defendants

constitute or are derived from proceeds traceable to a controlled

substance violation, a specified unlawful activity as defined in 18

U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D).  The defendants are

17

therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). In addition, with respect to the defendant bank funds, to the extent that the monies seized from the bank accounts are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant bank funds are identical property found in the same account as the property involved in the specified offense, rendering them subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984(a).

THIRD CLAIM FOR RELIEF

40. Plaintiff incorporates the allegations of paragraphs 1-35 above as though fully set forth herein.

41. Based on the above, plaintiff alleges that the defendants constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a violation of 21 U.S.C. § 841 et seq. The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). In addition, with respect to the defendant bank funds, to the extent that the monies seized from the bank accounts are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant bank funds are identical property found in the same account as the property involved in the specified offense, rendering them subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 984(a).

FOURTH CLAIM FOR RELIEF

42. Plaintiff incorporates the allegations of paragraphs 1-35 above as though fully set forth herein.

43.   Based on the above, the defendant bank funds are subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) as property involved in transactions or attempted transactions in violation of 31 U.S.C. §§ 5313(a), 5324(a) and 5325, or conspiracy to commit such violation, or property traceable to such violation or conspiracy.

WHEREFORE, the United States prays that:

(a)   due process issue to enforce the forfeiture of the defendants;

(b)   due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)   that this Court decree forfeiture of the defendants to the United States of America for disposition according to law; and

(d)   for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED: September 22, 2003

                              DEBRA W. YANG
                              United States Attorney
                              STEVEN D. CLYMER
                              Special Assistant United States
                              Attorney
                              Chief, Criminal Division
                              STEVEN R. WELK
                              Assistant United States Attorney
                              Chief, Asset Forfeiture Section


                              _____
                              VICTOR A. RODGERS
                              Assistant United States Attorney

                              Attorneys for Plaintiff
                              UNITED STATES OF AMERICA

19

1                              <u>VERIFICATION</u>

2        I, Edward A. Talbot III, hereby declare that:

3        1.    I am a Task Force Officer assigned to the Drug

4    Enforcement Administration.

5        2.    I have read the above Complaint for Forfeiture and know

6    the contents thereof.

7        3.    The information contained in the Complaint is either

8    known to me personally, was furnished to me by official government

9    sources, or was obtained pursuant to subpoena.  I am informed and

10   believe that the allegations set out in the Complaint are true.

11       I declare under penalty of perjury under the laws of the

12   United States that the foregoing is true and correct.

13       Executed on September 22, 2003 at Baton Rouge, Louisiana.

14

15

16                                              Edward A. Talbot III

17

18

19

20

21

22

23

24

25

26

27

28

                                      20

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

ORIGINAL

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| United States of America | $118,312.46 in Bank Funds Seized from Hemlock Federal Bank Account Numbers, et al. |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): Chicago, Illinois |
|---|---|

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) Victor A. Rodgers, AUSA U.S. Attorney's Office 312 N. Spring Street, 14th Floor Los Angeles, CA 90012 (213) 894-2569 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes   ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☐ No          ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Complaint for Forfeiture 18 U.S.C. Sections 981(a)(1)(A) & (C) and 31 U.S.C. Section 5317(c)(2)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 810 Selective Service | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 891 Agricultural Act | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 892 Economic Stabilization Act | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | | SOCIAL SECURITY |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 895 Freedom of Information Act | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | ☒ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 890 Other Statutory Actions | ☐ 245 Tort Product Liability | | | | FEDERAL TAX SUITS |
| | ☐ 290 All Other Real Property | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No   ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**   Case Number: _____

CV-71 (01/03)                CIVIL COVER SHEET                Page 1 of 2

LACV03-6809 NM (RNB)

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM JS-44C, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII(b).  RELATED CASES:  Have any cases been previously filed that are related to the present case?  ☒ No    ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)    ☐ A.  Appear to arise from the same or substantially identical transactions, happenings, or events;
    ☐ B.  Involve the same or substantially the same parties or property;
    ☐ C.  Involve the same patent, trademark or copyright;
    ☐ D.  Call for determination of the same or substantially identical questions of law, or
    ☐ E.  Likely for other reasons  may entail unnecessary duplication of labor if heard by different judges.

IX. VENUE: List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☒ Check here if the U.S. government, its agencies or employees is a named plaintiff.


Los Angeles County


List the California County, or State if other than California, in which EACH named defendant resides.  (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.


Chicago, Illinois


List the California County, or  State if other than California, in which EACH claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.


Los Angeles County


X. SIGNATURE OF ATTORNEY (OR PRO PER):  _____    Date  9/22/03

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Pursuant to the Local Rules Governing Duties of Magistrate Judges, the following Magistrate Judge has been designated to hear discovery motions for this case at the discretion of the assigned District Judge:

**(RNBx)**

| | |
|---|---|
| [ ] Paul L. Abrams | [ ] James W. McMahon |
| [X] Robert N. Block | [ ] Margaret A. Nagle |
| [ ] Rosalyn M. Chapman | [ ] Arthur Nakazato |
| [ ] Elgin Edwards | [ ] Fernando M. Olguin |
| [ ] Charles Eick | [ ] Brian Q. Robbins |
| [ ] Marc Goldman | [ ] Suzanne H. Segal |
| [ ] Stephen J. Hillman | [ ] Carolyn Turchin |
| [ ] Jeffrey W. Johnson | [ ] Patrick J. Walsh |
| [ ] Ann I. Jones | [ ] A. J. Wistrich |
| [ ] Victor B. Kenton | [ ] CARLA WOEHRLE |
| [ ] Stephen G. Larson | [ ] Ralph Zarefsky |
| [ ] Jennifer T. Lum | |

Upon the filing of a discovery motion, the motion will be presented to the United States District Judge for consideration and may thereafter be referred to the Magistrate Judge for hearing and determination.  The Magistrate Judge's initials should be used on all documents filed with the Court so that the case number reads as follows:

### CV03- 6809 NM (RNBx)

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

1  DEBRA W. YANG
   United States Attorney
2  STEVEN D. CLYMER
   Special Assistant United States Attorney
3  Chief, Criminal Division
   STEVEN R. WELK
4  Assistant United States Attorney
   Chief, Asset Forfeiture Section
5  VICTOR A. RODGERS
   California Bar No. 101281
6  Assistant United States Attorney
   Asset Forfeiture Section
7       Federal Courthouse, 14th Floor
        312 North Spring Street
8       Los Angeles, California 90012
        Telephone:  (213) 894-2569
9       Facsimile:  (213) 894-7177

10 Attorneys for Plaintiff
   United States of America

11

12                 UNITED STATES DISTRICT COURT

13            FOR THE CENTRAL DISTRICT OF CALIFORNIA

14  _____ DIVISION

15 UNITED STATES OF AMERICA,      )   NO. LACV03-6809 NM (RNBx)
                                  )
16            Plaintiff,          )     **WARRANT FOR ARREST**
                                  )
17       v.                       )
                                  )
18 $118,312.46 IN BANK FUNDS      )
   SEIZED FROM HEMLOCK FEDERAL    )
19 BANK ACCOUNT NUMBERS           )
   20-00-069061, 20-50-22445 AND  )
20 20-00-069200; ONE 2003 HONDA   )
   ACCORD EX; ONE 1999 MERCEDES-  )
21 BENZ S500; $11,500.00 IN U.S.  )
   CURRENCY SITUATED IN SAFETY    )
22 DEPOSIT BOX 1815 AND $3,994.00 )
   IN U.S. CURRENCY,              )
23                                )
              Defendants.         )
24 _____)

25

26      TO:  UNITED STATES MARSHALS SERVICE FOR THE CENTRAL DISTRICT OF

27 CALIFORNIA:

28      A complaint having been filed in this action,

1   IT IS ORDERED that you attach the defendants, $118,312.46 in Bank

2   Funds Seized from Hemlock Federal Bank Account Numbers 20-00-069061, 20-

3   50-22445 and 20-00-069200; One 2003 Honda Accord EX; One 1999 Mercedes-

4   Benz S500; $11,500.00 in U.S. Currency situated in safety deposit box

5   1815 and $3,994.00 in U.S. Currency, and cause the same to be detained

6   in your custody, or in the custody of a Substitute Custodian, until

7   further notice of the Court, and that you give due notice to all

8   interested persons that they must file their Claims and Answers with the

9   Clerk of this Court within the time allowed by law.

10   YOU ARE FURTHER ORDERED to file this process in this Court with

11   your return promptly after execution.

12   DATED: _____SEP 2 2 2003_____

14   SHERRI R. CARTER, Clerk

15   R. L. BYER

16   Deputy Clerk

2