1  DEBRA W. YANG
   United States Attorney
2  STEVEN D. CLYMER
   Special Assistant United States Attorney
3  Chief, Criminal Division
   STEVEN R. WELK
4  Assistant United States Attorney
   Chief, Asset Forfeiture Section
5  VICTOR A. RODGERS
   California Bar No. 101281
6  Assistant United States Attorney
   Asset Forfeiture Section
7       Federal Courthouse, 14th Floor
        312 North Spring Street
8       Los Angeles, California 90012
        Telephone:  (213) 894-2569
9       Facsimile:  (213) 894-7177

10 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

11

12              UNITED STATES DISTRICT COURT

13         FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                    WESTERN DIVISION

15 UNITED STATES OF AMERICA,      )   No. CV 03-06809-NM(RNBx)
                                  )
16          Plaintiff,            )   FIRST AMENDED COMPLAINT FOR
                                  )   FORFEITURE
17                                )
                                  )
18          v.                    )   18 U.S.C. §§ 981(a)(1)(A),(C)
                                  )   and 984
19                                )   21 U.S.C. § 881(a)(6)
   $118,312.46 IN BANK FUNDS      )   31 U.S.C. § 5317(c)(2)
20 SEIZED FROM HEMLOCK FEDERAL    )
   BANK ACCOUNT NUMBERS           )   [DEA]
21 20-00-069061, 20-50-22445      )
   AND 20-00-069200; ONE 2003     )
22 HONDA ACCORD EX; ONE 1999      )
   MERCEDES-BENZ S500; ONE        )
23 2001 GMC DENALI; ONE 2000      )
   MERCEDES-BENZ S500; ONE 2003)
24 HUMMER H2; ASSORTED JEWELRY )
   SITUATED IN SAFE DEPOSIT       )
25 BOX NUMBER 1893; $16,000.00 )
   IN U.S. CURRENCY SITUATED      )
26 IN SAFE DEPOSIT BOX NUMBER     )
   1795; ASSORTED JEWELRY         )
27 SITUATED IN SAFE DEPOSIT       )
   BOX NUMBER 1795; $11,500.00 )
28 IN U.S. CURRENCY SITUATED IN)
   SAFE DEPOSIT BOX NUMBER 1815)

1  AND $3,994.00 IN U.S.          )
   CURRENCY,                      )
2                                 )
                                  )
3            Defendants.          )
                                  )
4  _____)

5

6      Plaintiff United States of America brings this claim against

7  $118,312.46 in bank funds seized from Hemlock Federal Bank account

8  numbers 20-00-069061, 20-50-22445 and 20-00-069200, (the "defendant

9  bank funds"), One 2003 Honda Accord EX, One 1999 Mercedes-Benz

10  S500, One 2001 GMC Denali, One 2003 Hummer H2, One 2000 Mercedes-

11  Benz S500, Assorted Jewelry Situated in Safe Deposit Box Number

12  1893, $16,000.00 in U.S. Currency Situated in Safe Deposit Box

13  Number 1795, Assorted Jewelry Situated in Safe Deposit Box Number

14  1795, $11,500.00 in U.S. Currency situated in Safe Deposit Box

15  Number 1815 and $3,994.00 in U.S. Currency (collectively, the

16  "defendants" or the "defendant assets") as follows:

17                       JURISDICTION AND VENUE

18      1.   The government brings this in rem forfeiture action

19  pursuant to 18 U.S.C. §§ 981(a)(1)(A), (C) and 984, 21 U.S.C. §

20  881(a)(6) and 31 U.S.C. § 5317(c)(2).

21      2.   This Court has jurisdiction over the matter under 28

22  U.S.C. §§ 1345 and 1355.

23      3.   Venue lies in this district pursuant to 28 U.S.C. § 1395.

24                       PERSONS AND ENTITIES

25      4.   The plaintiff in this action is the United States of

26  America.

27  / / /

28  / / /

2

5.   The defendants are:

   a.   $118,312.46 in bank funds at Hemlock Federal Bank, 8855 South Ridgeland Avenue, Oak Lawn, Illinois 60453, consisting of $90,217.46 in funds in account number 20-00-069061, $18,019.62 in funds in account number 20-50-22445 and $10,075.38 in funds in account number 20-00-069200 seized on or about April 15, 2003 pursuant to federal seizure warrants;

   b.   One 2003 Honda Accord EX VIN number JHMCM56603C018686, registered to Saleh Mizyed at 6440 West 89th Place, Oak Lawn, Illinois and seized on or about April 15, 2003 from 6440 West 89th Place, Oak Lawn, Illinois;

   c.   One 1999 Mercedes-Benz S500 VIN number WDBGA51G4XA418780, registered to Saleh Mizyed at 6440 West 89th Place, Oak Lawn, Illinois and seized on or about April 15, 2003 from 6440 West 89th Place, Oak Lawn, Illinois;

   d.   One 2001 GMC Denali VIN number 1GKEK63U31J172024 and seized on or about April 15, 2003 from 6440 West 89th Place, Oak Lawn, Illinois;

   e.   One 2003 Hummer H2 VIN number 5GRGN23U83H100667 registered to Kandu Creations, LLC c/o Thoroughbred Records, 5206 Benito Street # 217 and seized on or about April 15, 2003 from 5911 West 88th Place, Oak Lawn, Illinois;

   f.   One 2000 Mercedes-Benz S500 VIN number WDBNG75JXYA049335 registered to Galeb Mizyed, 5911

W. 88th Place, Oak Lawn, Illinois 60453 and seized on or about July 23, 2003 from 9830 Southwest Highway, Oak Lawn, Illinois 60453;

g. Assorted Jewelry Situated In Safe Deposit Box Number 1893 at Hemlock Federal Bank, 8855 South Ridgeland Avenue, Oak Lawn, Illinois 60453, in the name of Abdul Mizyed and Elsa Mizyed and seized on or about April 15, 2003;

h. $16,000.00 In U.S. Currency Situated In Safe Deposit Box Number 1795 at Hemlock Federal Bank, 8855 South Ridgeland Avenue, Oak Lawn, Illinois 60453, in the name of Ghalia Mizyed and seized on or about April 15, 2003;

i. Assorted Jewelry Situated In Safe Deposit Box Number 1795 at Hemlock Federal Bank, 8855 South Ridgeland Avenue, Oak Lawn, Illinois 60453, in the name of Ghalia Mizyed and seized on or about April 15, 2003;

j. $11,500.00 In U.S. Currency Situated In Safe Deposit Box Number 1815 at Hemlock Federal Bank, 8855 South Ridgeland Avenue, Oak Lawn, Illinois 60453 and seized on or about April 15, 2003; and

k. $3,994.00 in U.S. Currency seized on or about April 15, 2003 from the person of Saleh Mizyed.

6. The defendants were seized by the Drug Enforcement Administration ("DEA") and are in the custody of the United States Marshals Service where they will remain subject to this Court's jurisdiction during the pendency of this action.

/ / /

4

7.   The interests of Galeb Mizyed, Ghalia Mizyed, Saleh Mizyed, Badeeh Mizyed, Abdul Mizyed, Elsa Mizyed, Harlem Motor Cars, Inc., General Motors Acceptance Corporation and Star Auto Repair Foreign & Domestic, Inc. may be adversely affected by these proceedings.

<u>BASIS FOR FORFEITURE</u>

<u>Background And Summary Of The Investigation</u>

8.   DEA commenced an investigation into the drug trafficking activities of the Mizyed family, including Galeb Mizyed, his brother Abdul Mizyed and their father, Saleh Mizyed, after learning that Galeb Mizyed was responsible for coordinating and distributing large amounts of pseudoephedrine into the southern California area which Galeb Mizyed and his co-conspirators thereafter redistributed to other pseudoephedrine brokers or directly to persons who used the pseudoephedrine to manufacture methamphetamine.  As a result of the investigation, law enforcement officers have learned that the Mizyeds have been trafficking in pseudoephedrine since at least the middle of 2001.

9.   During the investigation and prior to the seizure of the defendant assets, law enforcement officers seized from Galeb Mizyed and persons or places under his control (1) over 600 pounds of pseudoephedrine in Rancho Cucamonga, California on November 30, 2002; (2) over 3 tons of pseudoephedrine in Las Vegas, Nevada on February 7, 2003; and (3) over $250,000.00 in drug proceeds.  In furtherance of their illegal pseudoephedrine drug trafficking scheme, the Mizyeds, who maintained their permanent residency in Illinois but shuttled back and forth between California and Illinois in connection with their drug trafficking business,

engaged in the following actions with their co-conspirators, among others:

    a.    The Mizyeds purchased pseudoephedrine from persons in Canada, including Ibraham Balsheh, a Canadian citizen and resident of Ottawa, Canada, and imported those drugs into the United States.

    b.    Galeb Mizyed distributed the pseudoephedrine in California, either selling it directly to methamphetamine manufacturers, or to pseudoephedrine brokers who resold the product to methamphetamine manufacturers.

    c.    Galeb Mizyed's female acquaintances, including Kimberly Easterling, Mirlo Paez-Calderon and Meiko Choniece Jackson converted the cash received from pseudoephedrine sales into money orders payable to Galeb or Saleh Mizyed.

    d.    Rather than purchase money orders totaling $10,000.00 or more from a single vendor at the same time, thereby triggering the federal currency reporting requirement obligating money order issuers to report the currency transaction under federal currency reporting requirements, Easterling, Paez-Calderon and Jackson would instead purchase money orders totaling over $10,000.00 from more than one money order issuer in a single day, in an attempt to prevent any tracing of the funds to an illegal drug trafficking source.

/ / /

6

e.   In addition, because restrictions exist relative to a money order vendor selling money orders in excess of $3,000.00 to a single purchaser at the same time, Galeb Mizyed's co-conspirators attempted to avoid those restrictions by purchasing individual money orders for amounts significantly below the $3,000.00 limit on a given day, when the total of the smaller money orders reached sums far above the $3,000.00 limit.

f.   Easterling, Paez-Calderon and Jackson then sent the money orders, frequently via Federal Express, to the Mizyeds in Illinois.

g.   Upon receiving the money orders, Galeb and Saleh Mizyed deposited the money orders, which represented the proceeds of drug trafficking and moneys used in transactions designed to avoid currency reporting and other requirements, into the Mizyeds' bank accounts at Hemlock Federal Bank in Illinois.

Law Enforcement Surveillance Of The Mizyed Drug Trafficking Organization Results In Substantial Seizures Of Pseudoephedrine, Cash And Money Orders.

10.   Pursuant to lawful Court Orders, a number of conversations between Mizyed and other members of his drug trafficking conspiracy were intercepted by law enforcement officers.  The substance of those conversations, as interpreted by law enforcement officers, are set forth below.

/ / /

7

Galeb Mizyed Negotiates Pseudoephedrine Sale Which
Results In Seizure of 600 Pounds of Pseudoephedrine from
Rancho Cucamonga on November 30, 2002.

11.    On October 25, 2002, Galeb Mizyed spoke with Mieko
Choniece Jackson.  During the conversations, Galeb Mizyed told
Jackson that he wanted to stop by the storage location in Ontario,
California to view the contents of the storage locker situated
there.  He also reminded Jackson that he gave her cash which he
wanted Jackson to "exchange" for him (meaning Galeb Mizyed wanted
Jackson to purchase money orders with the cash, and send them to
Galeb Mizyed).

12.    On November 27 and 29, 2002, Galeb Mizyed spoke with Max
Stevenson, and made preparations for a pseudoephedrine sale which
ultimately took place on November 30, 2002.  On November 30, 2002,
Galeb Mizyed had numerous conversations concerning this drug
transaction.  At about 12:02 p.m and 12:10 p.m, Galeb Mizyed spoke
with an unidentified male and discussed prices and quantities of
pseudoephedrine Galeb Mizyed was prepared to sell.  At about 12:18
p.m., Galeb Mizyed spoke with David Gregory Wallace, and told him
that the pseudoephedrine buyers were on their way over to pick up
the pseudoephedrine from Galeb Mizyed and Stevenson.  Approximately
one hour later, at about 1:30 p.m., Stevenson departed from 13455
Sumter Street in Fontana, California, a residence used by Galeb
Mizyed, in a new white Navigator with paper plates.  At
approximately 1:38 p.m., Galeb Mizyed told a third person where
that individual could pick up the pseudoephedrine.  Stevenson
traveled to a storage location in Rancho Cucamonga, and loaded
pseudoephedrine from the storage location into a white mini-van
provided by two other individuals.  Stevenson then left the storage

8

1  facility in the mini-van and was stopped by law enforcement

2  officers.   After Stevenson consented to a search of the vehicle,

3  officers found 15 boxes labeled "Made in Canada."   Inside the boxes

4  were large plastic bags containing pseudoephedrine in pill-form,

5  later found to weigh about 616 pounds.

6          Saleh and Galeb Mizyed Negotiate Pseudoephedrine Sale
          Which Results In Seizure on February 7, 2003 Of 3 Tons Of

7          Pseudoephedrine Imported From Canada.

8      13.   On January 2, 2003, Saleh Mizyed crossed into the United

9  States from Windsor, Ontario, Canada after meeting with Ibraham

10  Balsheh, a Canadian resident and pseudoephedrine supplier.   On

11  January 3 and 4, 2003, co-conspirator Jean-Robert Gaston and

12  another individual unloaded approximately 85 and 81 boxes of

13  pseudoephedrine, respectively, into storage units at 1525

14  Sieveright Road, unit #14 and 3105 Hawthorne Building F, unit # 7.

15  On January 24, 2003, at about 3:26 p.m., Saleh Mizyed spoke with

16  Balsheh who told Saleh Mizyed that he was still waiting to complete

17  the pseudoephedrine transaction.

18      14.   On January 31, 2003, at about 11:30 p.m., Galeb Mizyed

19  ordered 150 boxes of pseudoephedrine from Balsheh for delivery in

20  Canada.   On February 2, 2003, Balsheh told Brian Carpenter, a

21  Canadian citizen, that Carpenter could pick up the pseudoephedrine

22  on February 4, 2003.   On February 3, 2003, Gaston and another

23  individual loaded approximately 150 boxes of pseudoephedrine from

24  the Sieveright and Hawthorne storage locations.   Thereafter,

25  Carpernter received the boxes of pseudoephedrine from Gaston, which

26  were off-loaded into a tractor trailer which Carpenter used to

27  transport the drugs into the United States.   Carpenter traveled to

28  Gary, Indiana, where he met with Jaimie Farah at a truck stop and

1   transferred the pseudoephedrine into a tractor trailer used by

2   Farah, on February 5, 2003.  Farah then traveled to Las Vegas,

3   Nevada, where he met with Easterling on February 6, 2003.  The 150

4   boxes containing approximately 6,900 pounds (three tons) of

5   pseudoephedrine were seized on February 7, 2003.

6           January and February 2003 Seizures of Money Orders
            Purchased In California And Sent By Federal Express To

7           Galeb Mizyed in Illinois

8       15.  On or about January 6, 2003, a federal search warrant was

9   executed on a Federal Express package sent from Mirlo Paez-

10  Calderon.  Law enforcement officers seized $6,000.00 in money

11  orders found in the package.

12      16.  On or about February 21, 2003, a federal search warrant

13  was executed, which resulted in the seizure of money orders

14  totaling $26,000.00 in Illinois.  In telephone conversations after

15  the seizure, Galeb Mizyed told Paez-Calderon that law enforcement

16  officers had taken all the money orders that an unidentified third

17  party had given him to purchase pseudoephedrine.

18          Seizures of Cash Exceeding $200,000.00 From Galeb Mizyed
            and his Co-conspirators Between December 4, 2002 and

19          January 9, 2003, Including Cash Seizure When Galeb Mizyed
            Attempted to Enter Canada.

20

21      17.  On December 4, 2002, after Jackson made arrangements to

22  purchase a one-way ticket for Galeb Mizyed to travel to Illinois

23  from Los Angeles, members of the Los Angeles International Airport

24  ("LAX") DEA Task Force made contact with Galeb Mizyed and his two

25  associates at LAX, and seized $112,920.00 in currency carried by

26  those individuals.

27      18.  In addition, law enforcement officers seized $101,160.00

28  in U.S. currency on December 28, 2002, which was hidden in both

10

rear wheel wells of the Hummer H2 in which Galeb and Abdul Mizyed were traveling while en route from California to Illinois.

19. On January 9, 2003, Galeb Mizyed spoke with Stevenson concerning the seizure of approximately $12,000.00 by the Bureau of Immigration and Customs Enforcement (formerly U.S. Customs) from Galeb Mizyed and his associates at the United States/Canada border. During the conversation, Galeb Mizyed told Stevenson that he had been denied entry into Canada.

Money Orders Purchased In California In Violation Of Law Are Deposited, Along With Structured Deposits Of Cash, Into The Mizyed Illinois Bank Accounts Which Contain The Defendant Bank Funds.

20. It is common for drug traffickers to structure deposits into their bank accounts to evade the currency reporting requirement which obligates banks to report currency deposits which exceed $10,000.00. In order to circumvent this requirement, drug traffickers deposit currency in a bank account up to $10,000.00, and shortly thereafter make additional deposits (for $10,000.00 or less) because they believe the bank will not report the transactions. In addition, drug traffickers often attempt to disguise the cash proceeds from their drug transactions by converting those proceeds into money orders. The money orders are usually purchased in amounts less than $3,000.00, so that the money order vendor can sell the money orders to the drug trafficker without complying with the requirements of 31 U.S.C. § 5325.

Hemlock Federal Bank Account Number 20-00-69061 ("Target Account # 1").

21. Pursuant to a transfer on January 22, 2002 of the remaining funds in Hemlock Federal Bank Account Number 20-00-66827,

1 | which was in the name of Galeb, Saleh and Badeeh Mizyed, to Target

2 | Account # 1, $51,058.18 was transferred into Target Account # 1.

3 | Before the January 22, 2002 transfer, the following deposits were

4 | made into Account Number 20-00-66827:

| Date of Deposit | Amount of Deposit | Form of Deposit |
|---|---|---|
| 01/19/2001 | $10,000.00 | Money Orders (all for $500.00 and purchased in Southern California during January 2001) |
| 01/26/2001 | $ 5,000.00 | Money Orders (all for $500.00 and purchased in Southern California during January 2001) |
| 06/04/2001 | $10,000.00 | Cash |
| 06/05/2001 | $10,000.00 | Cash of $2,876.00 and check for $7,174.00 |
| 06/08/2001 | $10,000.00 | Cash of $9,000.00 and remainder in checks |
| 06/12/2001 | $ 9,909.00 | Cash |
| Total | $54,909.00 | |

17 |     22.  After the January 22, 2002 transfer, the following

18 | deposits were made into Target Account # 1:

| Date of Deposit | Amount of Deposit | Form of Deposit |
|---|---|---|
| 07/29/2002 | $10,000.00 | $ 9,750.00 in Money Orders (all purchased in California) and $250.00 in cash |
| 07/30/2002 | $10,000.00 | $ 8,500.00 in Money Orders (all purchased in California) and $1,500 from an unknown source |
| 08/20/2002 | $ 9,000.00 | Cash |
| 08/23/2002 | $ 9,000.00 | Cash |
| Total | $38,000.00 | |

28 | / / /

12

23.   The total of the above-referenced deposits is $92,909.00 ($54,909.00 + $38,000.00).  On October 11, 2002, $20,000.00 was withdrawn from Target Account # 1, leaving a balance in that account of $89,727.68.  Since October 2002, the account has had virtually no activity, other than the crediting of interest. Pursuant to a federal seizure warrant, $90,217.46 in funds were seized from Target Account # 1 on or about April 15, 2003.  These funds are among the defendant assets in this case.

Hemlock Federal Bank Account Number 20-00-69200 ("Target Account # 2").

24.   Target Account # 2 was opened with one deposit on or about July 30, 2002.  On that date, money orders totaling $10,000.00 (12 money orders in the sum of $750.00 each and 1 money order for $1,000.00) were deposited into Target Account # 2. Pursuant to a federal seizure warrant, $10,075.38 in funds were seized from Target Account # 2 on or about April 15, 2003, and are among the defendant assets in this case.

Hemlock Federal Bank Account Number 20-50-22445 ("Target Account # 3").

25.   The following deposits were made into Target Account # 3:

| Date of Deposit | Amount of Deposit | Form of Deposit |
| --- | --- | --- |
| 07/29/2002 | $10,000.00 | Money Orders (all purchased in Southern California on July 26, 2002 and consisting of 20 money orders for $500 each bought at three different locations) |
| 07/30/2002 | $10,000.00 | Money Orders (all purchased in Southern California) |
| 08/01/2002 | $ 8,000.00 | Money Orders (all purchased in Southern California for $500 each, including 9 money orders purchased on July 24 from two South |

| | | |
|---|---|---|
| | | Gate, California locations, 6 money orders purchased on July 25 from two locations and 1 purchased on July 26 from a South Gate location) |
| 08/02/2002 | $ 7,000.00 | Money Orders (all purchased in Southern California on July 26, 2002 and consisting of 14 money orders for $500 each bought at three different locations) |
| 08/05/2002 | $ 9,000.00 | Money Orders (all purchased in Southern California, including 14 money orders purchased on July 29, 2002 for $500 each from five different locations and 4 money orders for $500 each) |
| Total | $44,000.00 | |

26.  Pursuant to a federal seizure warrant, $18,019.62 in funds were seized from Target Account # 3 on or about April 15, 2003, and are among the defendant assets in this case.

Money Orders Purchased In California From July 24, 2002 to July 30, 2002.

27.  A significant number of money orders purchased in California between July 24 and 30, 2002 and linked to the Mizyed co-conspirators were thereafter deposited into the Target Accounts. The money orders were deposited into Target Account # 1 on July 29 and 30; Target Account # 2 on July 30 and Target Account # 3 on July 29, 30, August 1, 2 and 5.  The total money orders, segregated by date of purchase and money order issuer, are as follows:

| Date | MoneyGram | Western Union | Continental | Others | Total Amount |
|---|---|---|---|---|---|
| 7/24/2002 (Wednesday) | $23,500 | 0 | 0 | 0 | $23,500.00 |
| 7/25/2002 (Thursday) | $19,000 | $ 7,000 | 0 | 0 | $26,000.00 |
| 7/26/2002 (Friday) | $75,800 | $16,000 | $ 5,000 | $ 1,400 | $98,200.00 |

| | | | | | |
|---|---|---|---|---|---|
| 7/29/2002 (Monday) | $16,500 | $ 26,500 | $ 5,000 | 0 | $48,000.00 |
| 7/30/2002 (Tuesday) | 0 | $ 8,500 | 0 | 0 | $ 8,500.00 |
| Total | $134,800 | $ 58,000 | $ 10,000 | $ 1,400 | $204,200.00 |

28.  Each of the money order issuers (MoneyGram, Western Union and Continental), would be required to report money order purchases exceeding $10,000.00 on one day.  However, drug traffickers typically circumvent this requirement by purchasing the money orders from multiple locations, and then depositing the money orders in different bank accounts in attempting to conceal the source of the drug proceeds.

29.  The money orders deposited into the Target Accounts from July 29 to August 6, 2002 constitute a portion of the above-referenced money orders purchased in California from July 24 to July 29, 2002.  The money orders themselves also show that they are part of the narcotic trafficking/structuring scheme because, among other things, a substantial number of them were purchased in South Gate, California, where Paez-Calderon, the person who sent over $30,000.00 in money orders to Mizyed in Illinois in January and February 2003, resides.  Money orders deposited into Target Account ## 1 and 3 between July 29 and August 5, 2003 include $9,250.00 in money orders (in denominations of $500, $750 and $1,000) purchased on July 24 from four different South Gate locations; and $27,300 in money orders purchased on July 26, consisting of $16,500 in money orders (for $750.00 each) at one South Gate location, $1,500 in money orders (for $500 each) purchased at another South Gate location, $1,500 in money orders (for $500 each) purchased at yet another South Gate location, and $7,800 in money orders (7 for $1,000 and 1 for 800) purchased at still another South Gate

1  location.  In addition, the money orders deposited into Target

2  Account # 2 on July 30 2002, consist of twelve money orders in the

3  sum of $750.00 purchased from one South Gate location, and one

4  money order for $1,000.00 purchased from another South Gate

5  location.

6       <u>July 29 and 30 Money Order Deposits Into Target # 1</u>.

7      30.  As set forth above, money orders worth $9,750.00 and

8  $8,500.00 were deposited into Target # 1 on July 29 and 30, 2002,

9  respectively.  The $9,750.00 in July 29-deposited money orders

10  consist of the following:

11      a.  14 money orders plus 1 erroneously credited money

12         order for $500 each (total $7,500.00), purchased in
    Los Angeles on July 26, 2002; and

13      b.  3 money orders for $750.00 each (total $2,250.00 and

14         purchased at one store in South Gate, California on
    July 24, 2002.

15      31.  On July 30, 2002, money order deposits into Target # 1

16  were $8,500.00 and into Target # 3 were $10,000.00, bringing the

17  total July 30, 2002 money order deposits to $18,500.00.  The

18  $18,500.00 in July 30, 2002 money order deposits to Target Accounts

19  ## 1 and 3 consist of:

20      a.  money orders totaling $1,750.00 (one for $750.00 and

21         the other for $1,000.00) purchased on July 24, 2002
    at two locations in South Gate, California;

22      b.  money orders totaling $15,950.00 purchased on July

23         26, 2002 from:

24         1.  two locations in South Gate (11 money orders
    for $750.00 from one location in South Gate;
    and 6 money orders for $1,000.00 and 1 money

25            order for $800.00 from another location in
    South Gate); and

26         2.  two post office facilities in California (3

27            money orders for $300.00 each); and

28      c.  one money order for $800.00 purchased from Nix Check
    Cashing in California.

Execution of Federal Search Warrants On April 15, 2003

32.   On April 15, 2003, law enforcement officers executed federal search warrants on a number of locations linked to the Mizyed family in Illinois and elsewhere.  In this regard, law enforcement officers executed a search warrant at 6440 West 89th Place, in Oak Lawn, Illinois, the residence of Saleh Mizyed. Found and seized at the residence were the defendants One 2003 Honda Accord EX and One 1999 Mercedes-Benz S500.  In addition, law enforcement officers arrested Saleh Mizyed and seized the defendant $3,994.00 in currency he was carrying.

33.   On April 15, 2003, law enforcement officers executed a federal search warrant at 5911 West 88th Place, Oak Lawn, Illinois, the residence of Galeb Mizyed.  As a result of the search, law enforcement officers seized the defendant 2003 Hummer H2, which was acquired pursuant to a contract dated August 9, 2002 between Mark Christopher Cadillac Oldsmobile and Kandu Creations, LLC c/o Thoroughbred requiring a $25,000.00 down payment and 59 monthly payments of $589.81.  The $25,000.00 down payment was made with 25 money orders in sums ranging between $200.00 and $500.00.  Galeb Mizyed is apparently an owner of Thoroughbred Records.

34.   During the execution of the search warrants, law enforcement officers discovered that the Mizyeds maintained safe deposit boxes at Hemlock Federal Bank.  Thereafter, on or about April 15, 2003, law enforcement officers seized various items from safe deposit boxes located at Hemlock Federal Bank, 8855 South Ridgeland Avenue, Oak Lawn, Illinois 60453, including the defendants (1) Assorted Jewelry Situated in Safe Deposit Box Number 1893; (2) $16,000.00 in U.S. Currency situated in Safe Deposit Box

Number 1795; (3) Assorted Jewelry Situated in Safe Deposit Box Number 1795; and (4) $11,500.00 in U.S. Currency Situated in Safe Deposit Box Number 1815.  In addition, on or about July 23, 2003, pursuant to a federal seizure warrant, law enforcement officers seized the defendant One 2000 Mercedes-Benz S-500 from Star Auto Repair Foreign & Domestic, Inc., 9830 Southwest Highway, Oak Lawn, Illinois 60453.  The vehicle was acquired by Galeb Mizyed in January 2003.

The Criminal Indictment Of The Mizyeds

35.  A total of eighteen individuals, including Galeb, Abdul, Saleh and Ghalia Mizyed were indicted in late April of this year. United States v. Galeb Mizyed, et al., Case No. CR 03-398, Central District of California.  The Indictment charges the criminal defendants with distributing pseudoephedrine between March 1999 and April 2003.  In addition, Saleh and Galeb Mizyed and several other individuals were also indicted in the Northern District of Illinois on pseudoephedrine trafficking and other charges.

The Mizyeds Lack Of Legitimate Sources Of Income To Support Their Possession Of The Defendant Assets.

36.  The Mizyeds lack sufficient legitimate income to support their possession of the defendant assets.  As reflected above, from January 19, 2001 until August 23, 2002, $92,909.00 in funds were deposited into Target Account # 1, and from July 30 to August 5, 2002, $54,000.00 was deposited into Target Account # 2 ($10,000.00 on July 30) and # 3 ($44,000.00 from July 29, 2002 to August 5, 2002).  Accordingly, a total of $146,909.00 was deposited into the Target Accounts from January 2001 to August 2002.  In addition, Galeb Mizyed has indicated that he paid approximately $30,000.00 in

cash for a Rolex watch during 2001.  Further, an additional $225,000.00 was seized from Galeb Mizyed and his associates as set forth in paragraphs 17 to 19 above, $232,316.00 was seized when Abdul Mizyed was at LAX with a female companion attempting to purchase a ticket to Illinois.  In addition, Galeb Mizyed's 2001 tax return reflects taxable income of $17,338.00 for 2001.

FIRST CLAIM FOR RELIEF

37.  Plaintiff incorporates the allegations of paragraphs 1-36 above as though fully set forth herein.

38.  Based on the above, plaintiff alleges that the defendants represent or are traceable to proceeds of illegal narcotics trafficking, were intended to be used in one or more exchanges for a controlled substance or listed chemical, or were used to facilitate one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 et seq.  The defendants are therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).  In addition, with respect to the defendant bank funds, to the extent that the monies seized from the bank accounts are not the actual monies directly traceable to the illegal activity identified herein, the defendant bank funds are identical property found in the same account as the property involved in the specified offense, rendering them subject to forfeiture pursuant to 18 U.S.C. § 984(a).

SECOND CLAIM FOR RELIEF

39.  Plaintiff incorporates the allegations of paragraphs 1-36 above as though fully set forth herein.

40.  Based on the above, plaintiff alleges that the defendants constitute or are derived from proceeds traceable to a controlled

substance violation, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D).  The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).  In addition, with respect to the defendant bank funds, to the extent that the monies seized from the bank accounts are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant bank funds are identical property found in the same account as the property involved in the specified offense, rendering them subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984(a).

THIRD CLAIM FOR RELIEF

41.  Plaintiff incorporates the allegations of paragraphs 1-36 above as though fully set forth herein.

42.  Based on the above, plaintiff alleges that the defendants constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a violation of 21 U.S.C. § 841 et seq.  The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).  In addition, with respect to the defendant bank funds, to the extent that the monies seized from the bank accounts are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant bank funds are identical property found in the same account as the property involved in the specified offense, rendering them subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 984(a).

FOURTH CLAIM FOR RELIEF

43.   Plaintiff incorporates the allegations of paragraphs 1-36 above as though fully set forth herein.

44.   Based on the above, the defendant bank funds are subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) as property involved in transactions or attempted transactions in violation of 31 U.S.C. § 5313(a), 5324(a) and 5325, or conspiracy to commit such violation, or property traceable to such violation or conspiracy.

WHEREFORE, the United States prays that:

(a)   due process issue to enforce the forfeiture of the defendants;

(b)   due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)   that this Court decree forfeiture of the defendants to the United States of America for disposition according to law; and

(d)   for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED: October 1, 2003

                    DEBRA W. YANG
                    United States Attorney
                    STEVEN D. CLYMER
                    Assistant United States Attorney
                    Chief, Criminal Division
                    STEVEN R. WELK
                    Assistant United States Attorney
                    Chief, Asset Forfeiture Section


                    _____
                    VICTOR A. RODGERS
                    Assistant United States Attorney

                    Attorneys for Plaintiff
                    UNITED STATES OF AMERICA

## VERIFICATION

I, Edward A. Talbot III, hereby declare that:

1.   I am a Task Force Officer assigned to the Drug Enforcement Administration.

2.   I have read the above First Amended Complaint for Forfeiture and know the contents thereof.

3.   The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena. I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 30, 2003 at Corona, California.

_____
Edward A. Talbot III

22